IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| LOVELY SKIN, INC., | ) | |
| | ) | |
| Plaintiff, | ) | 8:10CV87 |
| | ) | |
| v. | ) | |
| | ) | |
| ISHTAR SKIN CARE PRODUCTS, | ) | MEMORANDUM AND ORDER |
| LLC., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the Court on the motions for
summary judgment of defendant Ishtar Skin Products, LLC
("Ishtar") (Filing No. 89) and plaintiff Lovely Skin, Inc.
("Lovely Skin") (Filing No. 103), both filed pursuant to Federal
Rule of Civil Procedure 56. Also before the Court are Ishtar's
motion to strike jury demand (Filing No. 98), Ishtar's motion to
exclude the expert report and testimony of James T. Berger
(Filing No. 92), Ishtar's motion to exclude the expert report and
testimony of Megan Driscoll (Filing No. 95), and Lovely Skin's
motion to clarify (Filing No. 131). The motions have been fully
briefed with submissions of evidence. A hearing on the motions
was held on January 17, 2012. After reviewing the briefs,
evidence, and relevant law, and taking into account the parties'
oral arguments, the Court makes the following findings and
rulings.

**I.  Factual Background and Procedural History.**[1]

Lovely Skin and Ishtar both engage in the business of selling skin care products via an internet website.  Lovely Skin is a Nebraska corporation with its principal place of business in Omaha, Nebraska.  Lovely Skin has marketed and sold its products through its internet website, "LovelySkin.com," since 2003, the year of its incorporation (Filing No. 1, at ¶ 6).  Dr. Joel Schlessinger ("Dr. Schlessinger") and his wife, Nancy Schlessinger, are Lovely Skin's only stockholders, directors, and officers.

Dr. Schlessinger's medical practice, Skin Specialists, P.C. ("Skin Specialists"), first attempted to register the terms LOVELYSKIN (STYLIZED) and LOVELYSKIN.COM (STYLIZED) with the United States Patent and Trademark Office (the "PTO") in late 1999-early 2000 (Ex. 3, Filing No. 91, at 78-88).  The PTO rejected the applications on November 8, 1999, and February 24, 2000.  With regard to both terms, the PTO stated, "**MARK IS MERELY DESCRIPTIVE** The examining attorney refuses registration on the

_____

[1] In this case, Ishtar filed a brief in support of its motion for summary judgment that included a "statement of undisputed material facts," but Lovely Skin did not comply with Nebraska Civil Rule 56(b)(1) in its brief in opposition.  Lovely Skin included its own statement of facts, but did not refer by numbered paragraph to Ishtar's statement of facts, aside from Ishtar's paragraphs numbered 3, 31, and 37.  Pursuant to Nebraska Civil Rule 56(b)(1), the Court will consider Ishtar's statement of undisputed material facts, excluding paragraphs 3, 31, and 37, as admitted by Lovely Skin.

Principal Register because the proposed mark merely describes the services" (Ex. 3, Filing No. 91, at 78 and 83).  Skin Specialists then sought registration for both terms on the PTO's Supplemental Register (Ex. 3, Filing No. 91, at 127 and 130).

Since that time, Lovely Skin applied for and was awarded registration of two marks on the PTO Principal Register that are at issue in this action:  registered trademark number 2,998,098 for "LovelySkin" (stylized), dated September 20, 2005 (Ex. 1, Filing No. 1), and registered service mark number 3,253,791 for "LOVELYSKIN.COM," dated June 19, 2007 (Ex. 2, Filing No. 1) (the "Lovely Skin Marks").[2]  The Lovely Skin Marks were registered under 15 U.S.C. § 1052(f).

Ishtar is a California limited liability company with its principal place of business in Porter Ranch, California. Ishtar's sole member and business manager is Sharokin Vardeh ("Ms. Vardeh").  Ishtar has marketed and sold its products through its internet website, "livelyskin.com," since 2005 (Filing No. 90, at 6).

In March 2010, Lovely Skin brought this action against Ishtar pursuant to 15 U.S.C. § 1114(1), trademark infringement;

---

[2] The complaint also requests relief regarding a third mark. However, in a later filing with the Court, Lovely Skin admits that the registration for this third mark "was intentionally allowed to be cancelled" (Filing No. 48, at 4).  Because the issue is moot, the Court will disregard the complaint to the extent that it references the third mark.

Lovely Skin also alleged common law unfair competition, false designation of origin under 15 U.S.C. § 1125(a), and injury to business reputation (Filing No. 1).  In its complaint, Lovely Skin demands a jury trial.

On September 7, 2010, Ishtar filed a petition for cancellation of the Lovely Skin Marks with the PTO.  Ishtar informs the Court that the cancellation proceeding has been stayed, pending the outcome of this litigation.

On November 24, 2010, Ishtar filed its answer, where it asserted seven affirmative defenses along with two counterclaims that request cancellation of the registration of the Lovely Skin Marks (Filing No. 41).

## II.  Motions for Summary Judgment.

**A.  Standard of Review.**  Summary judgment is appropriate when, viewing the facts and inferences in the light most favorable to the nonmoving party, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 321–23 (1986).  "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

-4-

250 (1986).  "Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate."  *Koehn v. Indian Hills Cmty. Coll.,* 371 F.3d 394, 396 (8th Cir. 2004).

      **B.  Ishtar's Motion for Summary Judgment.**  Ishtar moves the Court for summary judgment as to all counts of Lovely Skin's complaint (Filing No. 89).  Ishtar's first argument in favor of summary judgment is that Lovely Skin's action is barred by the doctrine of unclean hands.

> The guiding doctrine . . . is the equitable maxim that "he who comes into equity must come with clean hands."  This maxim is far more than a mere banality.  It is a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant.

*Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945).  "A court of equity has a duty to consider not only the nature of the asserted right, but also the conduct of the plaintiff in seeking to enforce that right . . . . It is still, even in this modern day of merged practice, a court of conscience . . . ."  *U.S. Jaycees v. Cedar Rapids Jaycees*, 794 F.2d 379, 382 (8th Cir. 1986).

      The Third Circuit has described the application of the unclean hands defense in the context of a trademark case:

> Because a central concern in an
> unfair competition case is
> protection of the public from
> confusion, courts require clear,
> convincing evidence of "egregious"
> misconduct before invoking the
> doctrine of unclean hands.
> Furthermore, "the extent of actual
> harm caused by the conduct in
> question, either to the defendant
> or to the public interest, is a
> highly relevant consideration."

*Citizens Fin. Grp., Inc. v. Citizens Nat. Bank of Evans City*, 383
F.3d 110, 129 (3rd Cir. 2004) (citations omitted).  "To sustain
an unclean hands defense in a Lanham Act case, a defendant must
show that the plaintiff has engaged in inequitable conduct or bad
faith and the misconduct must have a material relation to the
equitable relief that the plaintiff seeks."  *Rainbow Play Sys.,
Inc. v. Backyard Adventure, Inc.*, No. CIV. 06-4166, 2009 WL
3150984, at *6 (D.S.D. Sep. 28, 2009).

Ishtar claims that Lovely Skin purchased "adwords" from
various internet search engines, such as Google, so that a person
who searched for the term "livelyskin" using the Google search
engine would be directed to a web page where the first entry, an
advertisement, was for Lovely Skin.  Ishtar also claims, "Lovely
Skin purchased the following keywords from Google: 'lively skin
el granada ca;' 'lively skin granada hills;' 'lively skin granada
hills ca;' 'livelyskin rancho cucamonga ca;' [and] 'livelyskin
san fernando'" (Filing No. 127, at 8).

-6-

Consequently, Ishtar claims that "it was Lovely Skin, and not Ishtar, who was the party that intentionally sought to strengthen the connection between the term "livelyskin" and the Lovely Skin Site in the minds of consumers" (Filing No. 90, at 12).  Ishtar suggests that "to the extent any consumer confusion exists, Lovely Skin's conduct has made it impossible to determine whether such confusion was caused by the Ishtar Site or Lovely Skin's advertising practices" (*Id*. at 12-13).  In addition, Ishtar claims that "the fact [that] Lovely Skin had been aware of Ishtar's operations for more than two and a half years before it began using the term 'livelyskin' in advertising suggests that Lovely Skin was intentionally seeking to redirect customers who were legitimately searching for the Ishtar Site" (*Id*. at 13).

In its opposing brief, Lovely Skin explains that it purchased the adword "livelyskin" because it typically "purchases misspellings of Lovely Skin to maximize its adword search results" (Filing No. 118, at 7).  Lovely Skin does not explain how the purchase of adwords that add geographical terms close in proximity to Ishtar's place of business in California was an aid in the correction of potential customers' spelling or typographical errors.

To the extent that the purchase of such adwords is found to be inequitable, Lovely Skin claims that it has "purged" itself of such conduct because "Lovely Skin no longer purchases

-7-

the adword 'livelyskin'" (*Id*. at 10).  However, at oral argument,
Ishtar claimed that the Lovely Skin advertisement still appeared
as recently as January 13, 2012.

    The Court has carefully considered Ishtar's "unclean
hands" argument.  Nevertheless, the Court finds that there are
"genuine factual issues" in this case that must be more fully
developed at trial.  Accordingly, Ishtar's motion for summary
judgment will be denied as to the issue of unclean hands.

    In its second major argument for summary judgment,
Ishtar claims that all four causes of action in Lovely Skin's
complaint require Lovely Skin to establish that Ishtar has
infringed on the Lovely Skin Marks, and since Lovely Skin has
failed to establish infringement, then summary judgment should be
granted.

    Trademark infringement requires the likelihood of
confusion on the part of the public.  *See* 15 U.S.C. § 1114(1).
The Eighth Circuit set forth the requirements for the likelihood
of confusion in what have become known as the "*SquirtCo* factors":

> To determine the likelihood of
> confusion between the trademarks
> and the allegedly infringing marks,
> we consider the following factors
> set forth in *SquirtCo. v. Seven-Up
> Co.*:  1) the strength of the
> trademark owner's mark; 2) the
> similarity between the trademark
> owner's mark and the alleged
> infringing mark; 3) the degree to
> which the allegedly infringing
> services competes with the

-8-

> trademark owner's services; 4) the
> alleged infringer's intent to
> confuse the public; 5) the degree
> of care reasonably expected of
> potential customers; and 6)
> evidence of actual confusion.

*Cmty. of Christ Copyright Corp. v. Devon Park Restoration Branch of Jesus Christ's Church*, 634 F.3d 1005, 1009 (8th Cir. 2011) (citing *SquirtCo. v. Seven-Up Co.*, 628 F.2d 1086, 1091 (8th Cir. 1980)). "[R]esolution of this issue does not hinge on a single factor but requires a consideration of numerous factors to determine whether under all the circumstances there is a likelihood of confusion." *SquirtCo.*, 628 F.2d at 1091.

The strength of a trademark is closely associated with its classification. "[Trademark] cases, and in some instances the Lanham Act, identify four different categories of terms with respect to trademark protection. Arrayed in an ascending order which roughly reflects their eligibility to trademark status and the degree of protection accorded, these classes are (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary or fanciful." *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (2nd Cir. 1976) (the "*Abercrombie* Spectrum"). Marks in the first two classes of the *Abercrombie* Spectrum are non-distinctive and are not capable of being registered.[3] Marks in the second two

---

[3] Generic terms are forever non-distinctive. Descriptive terms are non-distinctive unless they subsequently acquire secondary meaning.

classes of the *Abercrombie* Spectrum are distinctive and are capable of being registered.  Conversely, "[r]egistered marks . . . are presumed to be distinctive . . . ." *Aromatique, Inc. v. Gold Seal, Inc.*, 28 F.3d 863, 869 (8th Cir. 1994).

"The general rule regarding distinctiveness is clear: An identifying mark is distinctive and capable of being protected if it either (1) is inherently distinctive or (2) has acquired distinctiveness through secondary meaning." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769 (1992).  Thus, there are two paths that lead to the designation of "distinctiveness."  The first path is for marks that are either suggestive, arbitrary, or fanciful; those marks are inherently distinctive.  "A term is suggestive if it requires imagination, thought and perception to reach a conclusion as to the nature of goods." *Abercrombie*, 537 F.2d at 11.

The Lanham Act generally prohibits the registration of a mark that is "merely descriptive."  15 U.S.C. § 1052(e).  "A term is descriptive if it forthwith conveys an immediate idea of the ingredients, qualities or characteristics of the goods." *Abercrombie*, 537 F.2d at 11.  However, as delineated in 15 U.S.C. § 1052(f), a second path to distinctiveness exists for a descriptive mark that, by virtue of acquiring secondary meaning, becomes distinctive, while still retaining its status as "descriptive" on the *Abercrombie* Spectrum.  "Marks which are

-10-

merely descriptive of a product are not inherently distinctive. When used to describe a product, they do not inherently identify a particular source, and hence cannot be protected.  However, descriptive marks may acquire the distinctiveness which will allow them to be protected under the Act." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769 (1992).

Specifically, 15 U.S.C. § 1052(f) allows for "the registration of a mark used by the applicant which has become distinctive of the applicant's goods in commerce," established by "proof of substantially exclusive and continuous use thereof as a mark by the applicant in commerce for the five years before the date on which the claim of distinctiveness is made."  15 U.S.C. § 1052(f).  Therefore, it follows that a mark registered under § 1052(f) "cannot be inherently distinctive as a matter of law." *Aromatique,* 28 F.3d at 869.  However, registration under § 1052(f) also means that a mark is entitled to the "presumption . . . that the mark [has] acquired distinctiveness." *Aromatique,* 28 F.3d at 870.

Both of the Lovely Skin Marks were originally declared "merely descriptive" by the PTO.  In addition, both marks were subsequently registered under 15 U.S.C. § 1052(f).  Based on the foregoing discussion, the Court concludes that the Lovely Skin Marks are merely descriptive, not suggestive.

-11-

In addition, the very definition of "suggestive" cannot apply to "Lovely Skin" as a moniker for skin care products.  Like the PTO, the Court finds that no "imagination, thought, or perception" is needed to "reach a conclusion as to the nature of goods" sold under the name "Lovely Skin."  *Abercrombie*, 537 F.2d at 11.  The goods sold by Lovely Skin under the Lovely Skin Marks are designed to produce lovely skin; that is, the goods are designed to produce exactly what the name describes.

However, there still exists the presumption that the Lovely Skin Marks, descriptive though they may be, have nonetheless acquired secondary meaning and, thereby, have acquired distinctiveness.  Whether this presumption holds will be better determined by the Court after a more expansive airing of the evidence at trial.

With respect to the remaining *SquirtCo* factors,  The Court has reviewed the briefs and evidentiary submissions, and has considered the parties' oral arguments.  Viewing the facts and inferences in the light most favorable to the nonmoving party, Lovely Skin, the Court finds that the remaining *SquirtCo* factors (with the exception of "the alleged infringer's intent to confuse the public," see below) present numerous unresolved, material issues of fact that are not amenable to summary judgment.  Ishtar's motion for summary judgment will be denied.

    **C.   Lovely Skin's Motion for Summary Judgment.**   In its answer, Ishtar asserted two counterclaims requesting cancellation of the Lovely Skin Marks.  Lovely Skin moves the Court for summary judgment denying Ishtar's requests for cancellation (Filing No. 103).

    "In any action involving a registered mark the court may determine the right to registration, order the cancellation of registrations, in whole or in part, restore canceled registrations, and otherwise rectify the register with respect to the registrations of any party to the action."  15 U.S.C. § 1119. "This provision has been held to be concurrent with the authority of the Patent Office to conduct cancellation proceedings . . . ." *D. M. & Antique Import Corp. v. Royal Saxe Corp.*, 311 F. Supp. 1261, 1268 (D.C.N.Y. 1969).  "Cancellation is a discretionary matter for the district court."  *Gilbert/Robinson, Inc. v. Carrie Beverage-Missouri, Inc.*, 989 F.2d 985, 993 (8th Cir. 1993).

    In addition to the power of the district court to order the cancellation of a trademark, an aggrieved party may initiate a cancellation proceeding itself with the PTO:

> A petition to cancel a registration
> of a mark, stating the grounds
> relied upon, may . . . be filed as
> follows by any person who believes
> that he is *or will be* damaged . . .
> by the registration of a mark on
> the principal register established
> by this chapter . . . :  (1) Within
> five years from the date of the

> registration of the mark under this
> chapter.

15 U.S.C. § 1064(1) (emphasis added).

The Lovely Skin Marks were registered on September 20, 2005, and June 19, 2007.  Ishtar filed a petition to cancel the registration of the Lovely Skin Marks with the PTO on September 7, 2010, within five years of their registration (Ex. 3, Filing No. 91, at 132).

Lovely Skin's first argument in favor of summary judgment is that Ishtar neglected to plead fraud.  Unlike 15 U.S.C. § 1064(3), neither 15 U.S.C. §§ 1119 nor 1064(1) requires that Ishtar plead fraud under these circumstances.  Therefore, this argument must be rejected.

Lovely Skin's second argument is that Ishtar has not been damaged by the registration of the Lovely Skin Marks, as required by 15 U.S.C. § 1064(1).  Ishtar states that it has been damaged inasmuch as it is defending itself in this lawsuit, and that the likelihood of damage exists in the future because Ishtar may be precluded from registering its own marks due to the registration of the Lovely Skin Marks (Filing 120 at 15-16).  The Court finds that Ishtar has presented evidence that it has been or will be damaged by the Lovely Skin Marks in the context of 15 U.S.C. § 1064(1).

Viewing the facts and inferences in the light most favorable to the nonmoving party, Ishtar, the Court finds that

-14-

there remains a genuine dispute as to the material facts surrounding Ishtar's request for cancellation of the Lovely Skin Marks.  In particular, the Court finds that whether Lovely Skin had "substantially exclusive and continuous use" of the Lovely Skin Marks "in commerce for the five years before the date on which the claim of distinctiveness [was] made" is an unresolved, genuine factual issue that must be further developed.  15 U.S.C. § 1052(f).  Lovely Skin's motion for summary judgment as to Ishtar's counterclaims will be denied.

## III.  Ishtar's Motion to Strike Jury Demand.

"Determining which actions belong to law and which to equity for the purpose of delimiting the jury trial right continues to be one of the most perplexing questions of trial administration."  9 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2302 (3d ed. 2008).  The Supreme Court has described the process as a two-step historical test. In resolving the issue,

> we ask, first, whether we are
> dealing with a cause of action that
> either was tried at law at the time
> of the founding or is at least
> analogous to one that was. . . .
> If the action in question belongs
> in the law category, we then ask
> whether the particular trial
> decision must fall to the jury in
> order to preserve the substance of
> the common-law right as it existed
> in 1791.

-15-

*Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 376 (1996)

(citation omitted).  So, from a practical point of view,

> prior to trial, the attorneys for
> both parties and the trial court
> must atomize the issues raised by
> the action and determine whether
> they are purely legal, purely
> equitable, or common to both.  The
> federal jury decides the purely
> legal issues and any common to the
> legal and equitable claims; the
> court decides any purely equitable
> issues.

9 Wright & Miller, *supra*, § 2302.1.  Consequently, the Court will

evaluate each of the five remedies requested by Lovely Skin.

**1.  Declaratory Judgment.**  "[A]n order" that the Lovely

Skin Marks "are valid and the property of [Lovely Skin]" (Filing

No. 1, at 4).

**2.  Declaratory Judgment.**  "An order that [Ishtar] has

infringed upon [Lovely Skin's] Trademark, . . . has competed

unfairly with [Lovely Skin], has diluted the distinctiveness of

the trademark and has injured [Lovely Skin's] business reputation

. . . ." (Filing No. 1, at 4).

"[D]eclaratory judgments were utterly unknown in 1791

and thus the present right to a jury in an action for a

declaratory judgment cannot be resolved by a glance at history."

10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane,

*Federal Practice and Procedure* § 2769 (3d ed. 1998).  Nor can a

request for declaratory judgment "be decided on the supposition

that there is something inherently 'legal' or 'equitable' about this kind of action." *Id.*

> [T]he solution that has been worked out to this problem is to look to the kind of action in which the issue involved would have been decided if there were no declaratory-judgment procedure and to see whether the issue would have been triable of right to a jury in that action.  If there would have been a right to jury trial on the issue if it had arisen in an action other than for a declaratory judgment, it must be tried to a jury on demand in the declaratory action.  There is no right to jury trial if, absent the declaratory procedure, the issue would have arisen in a proceeding in equity . . . ."

*Id.*  "[A] plaintiff who is seeking equitable relief and not damages cannot wrest an entitlement to a jury trial by the facile expedient of attaching a claim for declaratory judgment. Otherwise anyone seeking an injunction could obtain a jury trial." *Marseilles Hydro Power, LLC v. Marseilles Land and Water Co.*, 299 F.3d 643, 648 (7th Cir. 2002).  Thus Lovely Skin's pleas for declaratory judgment do not carry with them the right to a jury trial unless Lovely Skin is otherwise afforded the right to a jury trial as to damages.

> **3.  Permanent Injunction.**  "[Ishtar] . . . be

permanently enjoined and restrained from . . ." using the address LivelySkin.com or any other imitation of LovelySkin.com;

-17-

otherwise infringing on the Lovely Skin Marks; and "[u]nfairly competing with [Lovely Skin], diluting the distinctiveness of the trademarks and [Lovely Skin's] distinctive packaging, or injuring [Lovely Skin's] business reputation in any manner" (Filing No. 1, at 4).

   **4. Mandatory Injunction.** "[Ishtar] be directed to file with this Court and serve on [Lovely Skin] . . . a report . . . setting forth the manner and form in which [Ishtar] has complied with the injunction," as provided in 15 U.S.C. § 1116(a) (Filing No. 1, at 4-5).

   An injunction is a classic form of equitable relief.

> Actions for injunctions are equitable in nature and were unknown to the common law courts of England or the United States until the merger of law and equity. Because of this history, there is no constitutional right to a jury trial on a claim for an injunction. A statute will not be read as having created a right to jury trial on a claim for an injunction unless Congress expressly has provided for one in the language of the statute.

9 Wright & Miller, *supra*, § 2308. The Lanham Act does not include an express provision for a jury trial for a party who is seeking an injunction. Absent such an express provision, Lovely Skin's requests for injunction lie in equity and do not support a demand for a jury trial.

**5. Damages / Profits / Attorney Fees**. "An accounting be held and judgment rendered against [Ishtar] for [Lovely Skin's] attorney fees for: i.  All profits received . . . by the use of the trade name LivelySkin.com.  ii.  All damages sustained by [Lovely Skin] . . . and that such damage be trebled" (Filing No. 1, at 5).

The Lanham Act provides the district court with considerable latitude in awarding damages or profits in a trademark action.

> When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office . . . shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and *subject to the principles of equity*, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action.  The court shall assess such profits and damages or cause the same to be assessed under its direction.

15 U.S.C. § 1117(a) (emphasis added).

In *Dairy Queen v. Wood*, 369 U.S. 469 (1962), the United States Supreme Court established that a request for damages on a trademark infringement claim was a legal claim that must be afforded a trial by jury.  "After *Dairy Queen* it is clear that there is a right to jury trial whenever damages are claimed in a

trademark action, even though the damage claim may be considered incidental to an equitable suit for an injunction." *Oxford Indus., Inc. v. Hartmarx Corp.*, No. 88 C 0322, 1990 WL 65792, at *5 (N.D. Ill. May 2, 1990).

Although the discovery period in this case ended on October 31, 2011, Lovely Skin has not submitted any evidence to the Court as to actual, monetary damages that it has suffered due to the alleged infringement by Ishtar.  On the contrary, during Dr. Schlessinger's deposition, in response to the question "So as you sit here today, you are not aware of any revenue that flowed to my client that should have flowed to you?" Dr. Schlessinger replied, "Actually, I would restate the question in a different manner.  I'm not aware of any revenue that went to [Ishtar] that shouldn't have come to Lovely Skin" (Ex. 2, Filing No. 100, at 17).  Dr. Schlessinger is apparently suggesting that *all* of Ishtar's revenue should have come to Lovely Skin, which is indistinguishable from a theory of disgorgement of profits.  The Court finds that without an articulated claim for damages, Lovely Skin's jury demand on that basis cannot stand.

A significant difference exists between requesting relief in the form of damages and in the form of profits:  "To obtain an accounting of profits, the courts almost always require that defendant's infringement imply some connotation of 'intent,' or a knowing act denoting an intent, to infringe or reap the

-20-

harvest of another's mark and advertising."  5 J. Thomas

McCarthy, *McCarthy on Trademarks and Unfair Competition* § 30:62

(4th ed. 2011) (collecting cases).[4]  "The property rights of

trademark owners and the interests of the public are advanced

neither by withholding monetary relief when equity requires such,

nor by the award of arbitrary monetary compensation where no

actual damages have been shown and defendant's behavior evidences

no wrongful intent."  *Bandag, Inc. v. Al Bolser's Tire Stores,*

*Inc.*, 750 F.2d 903, 921 (Fed. Cir. 1984).

The Eighth Circuit recently discussed the requirement

of willfulness for an infraction of 15 U.S.C. § 1125(a), the

third allegation in Lovely Skin's complaint, in *Masters v. UHS of*

*Delaware, Inc*. 631 F.3d 464 (8th Cir. 2011).  In *Masters*, the

Eighth Circuit was primarily addressing the issue of whether

proof of actual confusion was required for an award of money

damages.  In its discussion, the Eighth Circuit stated, "For

purposes of adjudicating this appeal, we assume, without

deciding, that willful infringement is a prerequisite of monetary

relief."  *Masters*, 631 F.3d at 471 n.2.  In addition, the Eighth

Circuit approvingly cited the Ninth Circuit: "*See Gracie v.*

*Gracie*, 217 F.3d 1060, 1068 (9th Cir. 2000) (holding that

eligibility for monetary relief under 15 U.S.C. § 1114 of the

---

[4] In the *Oxford* case, finding that a jury trial was proper,
the court noted that the jury had found that the party that
infringed trademarks "did so willfully."  *Id.* at *1.

Lanham Act 'requires only a likelihood of confusion combined with *willful* infringement') (emphasis in original) . . . ." *Masters*, 631 F.3d at 474.

Lovely Skin did not address the issue of intent in its brief in opposition to Ishtar's motion to strike the jury demand. However, in its brief in opposition to Ishtar's motion for summary judgment, Lovely Skin addressed the issue in the context of the *SquirtCo* factors. In support of its allegation of intent, Lovely Skin described the actions of Ms. Vardeh's husband in an apparently unrelated case, but did not indicate how his actions might be attributed to Ishtar (Filing No. 118, at 22-23). In addition, Lovely Skin named several of Ishtar's business practices of which Lovely Skin disapproves, but did not tell the Court what the nexus is between these activities and Lovely Skin (*Id.* at 23-24).

Ishtar claims that it "did not have knowledge of Lovely Skin's name or website when it adopted the url www.livelyskin.com" (Filing No. 122, at 3, citing deposition testimony by Ms. Vardeh). If anything, the evidence suggests that Ms. Vardeh was interested in the concept of "lively skin" as opposed to trying to mimic the words "lovely skin," since she registered both the domain names "livelyskin.com" and "energeticskin.com" during the same transaction (Ex. 3, Filing 91, at 65).

-22-

The Court finds that Lovely Skin has not submitted evidence that would establish that Ishtar intentionally infringed on the Lovely Skin Marks.  Therefore, absent intent, the "principles of equity" require that Lovely Skin not be allowed to seek disgorgement of profits and that Lovely Skin be limited to non-legal remedies only.

"Under the [Lanham Act], the decision to award fees is committed to the district court, not the jury." *Tamko Roofing Products, Inc. v. Ideal Roofing Co., Ltd.*, 282 F.3d 23, 31 (1st Cir. 2002) (citing 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 30:99 (4th ed. 2001)).  Since Lovely Skin's requests for damages, disgorgement of profits, and attorney fees do not meet the given requirements to establish the right to a trial by jury, Lovely Skin's jury demand will be denied, and Ishtar's motion to strike jury demand will be granted.

## IV.   Motion to Exclude Expert Report and Testimony of James T. Berger and of Megan Driscoll.

Ishtar seeks to exclude both the testimony of James T. Berger and the report that he has prepared, as well as the testimony of Megan Driscoll and the report she has prepared, under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).  After review of the reports and the parties' briefs, and in light of the fact that the jury demand is denied, the Court finds it more appropriate to

-23-

evaluate the admissibility and the weight to be given to the reports in the context of the bench trial.  Accordingly, the Court will reserve ruling on whether the reports will be received into evidence and whether the witnesses will testify as experts until the issues present themselves at trial, and Ishtar's motion to exclude will be denied.

**V.  Motion to Clarify.**

On December 6, 2011, this Court granted Ishtar's motion to compel Lovely Skin's responses to Ishtar's Requests for Production of Documents 32 and 37 (Filing No. 109).  Part of the deficiency in Lovely Skin's previous discovery responses had been the lack of dates, by year, that certain keywords were purchased. Now Lovely Skin moves the Court to clarify its order to "prevent the disclosure or discovery of information sought by [Ishtar] regarding the date, by year, Lovely Skin purchased its adwords on Google as such information is proprietary and confidential subject to protection from disclosure" (Filing No. 131, at 2). In the alternative, Lovely Skin also requests a protective order in this matter (*Id.*).

As explained in the previous order, the Court finds that Ishtar's discovery requests are directly relevant, at a minimum, to Ishtar's affirmative defenses.  To the extent that clarification is needed, the Court affirms its previous order (albeit with a new compliance date, February 17, 2012) and

-24-

directs Lovely Skin to comply with Ishtar's discovery requests as previously ordered, including the breakdown of keyword purchases by year.  In addition, this Court will enter a Protective Order to protect any confidential information that may be included in Lovely Skin's responses to Ishtar's Requests for Production of Documents 32 and 37.  Accordingly,

IT IS ORDERED:

1) Ishtar's motion for summary judgment (Filing No. 89) is denied;

2) Lovely Skin's motion for summary judgment (Filing No. 103) is denied;

3) Ishtar's motion to strike jury demand (Filing No. 98) is granted;

4) Ishtar's motion to exclude the expert report and testimony of James T. Berger (Filing No. 92) is denied;

5) Ishtar's motion to exclude the expert report and testimony of Megan Driscoll (Filing No. 95) is denied;

6) Lovely Skin's motion to clarify (Filing No. 131) is granted.  This Court's previous order granting Ishtar's motion to compel (Filing No. 109) is affirmed, with the exception that Lovely Skin must now comply with the order by February 17, 2012;

7) A second amended progression order setting the date for trial will be issued by the Court forthwith; and

-25-

8) Lovely Skin's responses to Ishtar's Requests for Production of Documents 32 and 37 are subject to a Protective Order and shall be disclosed only in designated ways:

a)   As used in this Protective Order, these terms have the following meanings:

"Attorneys" means any counsel of the parties; and

"Confidential Documents" are Lovely Skin's responses to Ishtar's Requests for Production of Documents 32 and 37, including any exhibits thereto.

b)   All Confidential Documents, along with the information contained in the documents, shall be used solely for the purpose of this action, and no person receiving such documents shall, directly or indirectly, use, transfer, disclose, or communicate in any way the documents or their contents to any person other than those specified in paragraph c). Any other use is prohibited.

c)   Access to any Confidential Document shall be limited to:

(i)   the Court and its staff;
(ii)  Attorneys;
(iii) persons shown on the face of the document to have authored or received it;
(iv)  court reporters retained to transcribe testimony;
(v)   the parties; and
(vi)  Sharokin Vardeh.

d)    Within 60 days of the termination of this action, including any appeals, Ishtar shall either destroy or return to Lovely Skin all Confidential Documents, including any copies thereof.

e)    Any party may apply to the Court for a modification of this Protective Order, and nothing in this Protective Order shall be construed to prevent a party from seeking such further provisions enhancing or limiting confidentiality as may be appropriate.

f)    No action taken in accordance with the Protective Order shall be construed as a waiver of any claim or defense in the action or of any position to discoverability or admissibility of evidence.

g)    The obligations imposed by this Protective Order shall survive the termination of this action.

DATED this 6th day of February, 2012.

BY THE COURT:

/s/ Lyle E. Strom

_____
LYLE E. STROM, Senior Judge
United States District Court