IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEBRASKA

| | |
|---|---|
| LOVELY SKIN, INC., ) | |
| ) | |
| Plaintiff, ) | 8:10CV87 |
| ) | |
| v. ) | |
| ) | |
| ISHTAR SKIN CARE PRODUCTS, ) | MEMORANDUM OPINION |
| LLC., ) | |
| ) | |
| Defendant. ) | |
| _____) | |

This matter is before the Court on the motion of defendant Ishtar Skin Care Products, LLC ("Ishtar") for attorney fees and related nontaxable costs filed pursuant to 15 U.S.C. § 1117(a) (Filing No. 182, with brief and index of evidence, Filing Nos. 183 and 184).  Plaintiff Lovely Skin, Inc. ("Lovely Skin") filed a brief in opposition to the motion (Filing No. 204, with attached exhibits), to which Ishtar replied (Filing No. 206).  After reviewing the motion, briefs, evidence, and relevant law, the Court finds the motion should be denied.

I. **Factual and Procedural Background**.[1]

Lovely Skin brought this case against Ishtar alleging trademark infringement under 15 U.S.C. § 1114(1), along with three other associated claims (Filing No. 1).  Dr. Joel Schlessinger and his wife, Nancy Schlessinger, are the sole stockholders, directors and officers of Lovely Skin.

---

[1] For a detailed factual background, see Findings of Fact, Filing No. 176 ("Memorandum Opinion").

Ishtar filed two counterclaims against Lovely Skin, calling for cancellation of the two Lovely Skin trademarks at issue (the "Lovely Skin Marks") (Filing No. 41). Ishtar's sole member and business manager is Ms. Sharokin Vardeh.

After a trial to the Court held July 18 - 23, 2012, judgment was entered cancelling the Lovely Skin Marks, finding in favor of Ishtar on all counts of the complaint, and assessing taxable costs against Lovely Skin (Filing No. 177). Specifically, the Court found that Ishtar had "satisfied its burden to rebut the presumption that the Lovely Skin Marks had acquired distinctiveness" (Memorandum Opinion, at 18). In addition, the Court found that "the Lovely Skin Marks had not acquired secondary meaning as of the dates of their registration" (*Id.* at 37). Finally, with regard to the likelihood of confusion analysis, this Court noted that "[i]t is indisputable that similarities exist between the parties' marks and that the parties engage in competing sales of high-end cosmetics over the internet" (*Id.* at 36). Nevertheless, evaluating all of the relevant factors and "taking into account the evidence presented at trial," this Court did not find that "a likelihood of confusion exists between the parties' marks" (*Id.*).

**II. Applicable Law**.

"Under the American rule, each party generally pays their own attorney fees unless express statutory authorization

exists to the contrary." *Hartman v. Hallmark Cards, Inc.*, 833 F.2d 117, 122 (8th Cir. 1987) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983)).  Section 35 of the Lanham Act provides such an exception to the typical American Rule:  "The court in exceptional cases may award reasonable attorney fees to the prevailing party."  15 U.S.C. § 1117.  "The Senate Report on the bill adding the attorney fee provision to the Lanham Act indicates defendants will be allowed to recover fees in exceptional cases in order to 'provide protection against unfounded suits brought . . . for harassment and the like.'" *Hartman*, 833 F.2d at 123 (quoting S. Rep. No. 93-1400, 93d Cong., 2d Sess., *reprinted in* 1974 U.S. Code Cong. & Admin. News 7132, 7136).

In the Eighth Circuit, "[a]n exceptional case is one in which a plaintiff brought an action that was groundless, unreasonable, vexatious, or was pursued in bad faith." *Hartman*, 833 F.2d at 123 (quotation omitted).  Nevertheless, "[b]ad faith is not a prerequisite to a Lanham Act fee award." *Id.* "Succinctly put, an exceptional case within the meaning of Section 35 is one in which one party's behavior went beyond the pale of acceptable conduct." *Aromatique, Inc. v. Gold Seal, Inc.*, 28 F.3d 863, 877 (8th Cir. 1994).

"Although bad faith is not a prerequisite to a Lanham Act fee award, the mere fact that plaintiff did not prevail is

-3-

not a sufficient basis for a finding that this is an exceptional case." *Saint Louis Univ. v. Meyer*, 4:07-CV-1733, 2009 WL 1542765, at *1 (E.D. Mo. June 2, 2009) (internal citation omitted) (citing *Scott Fetzer Co. v. Williamson*, 101 F.3d 549 (8th Cir. 1996)) (affirming denial of fees to prevailing defendant). "Where there is some evidence in the record to support the claims of the non-prevailing party, the case is not exceptional." *Lewis & Clark Outdoors, Inc. v. L.C. Indus., Inc.*, 5:07-CV-5164, 2009 WL 3617584 (W.D. Ark. Oct. 27, 2009), at *2 (citing *Scott Fetzer Co.,* 101 F.3d at 555).

### III.  Discussion.

Ishtar states that this is an "exceptional case" because "Lovely Skin's conduct indicates that it brought this trademark infringement action to oppress and force its competitor, Ishtar, out of business by imposing heavy litigation costs on Ishtar . . ." (Filing No. 183, at 12-13).  As an indication of Lovely Skin's bad conduct, Ishtar emphasizes the fact that Lovely Skin did not conduct a secondary meaning survey in support of its contention that the Lovely Skin Marks had, in fact, acquired secondary meaning, in conjunction with the Court's ultimate conclusion that secondary meaning in the Lovely Skin Marks did not exist.  Ishtar surmises that Lovely Skin did not perform the secondary meaning survey because of the certainty of failure (Filing No. 183, at 4).  While a positive secondary

-4-

meaning survey would have been strong evidence in Lovely Skin's favor, such surveys are by no means required.  *See Frosty Treats Inc. v. Sony Computer Entm't Am. Inc.,* 426 F.3d 1001, 1005 (8th Cir. 2005).  Instead of survey evidence, Lovely Skin presented circumstantial evidence that it claimed supported a finding of secondary meaning.  The fact that this effort was unsuccessful does not necessarily translate into an "abuse of process" (Filing No. 183, at 2).

Lovely Skin did provide "distinctiveness survey" evidence by Mr. James T. Berger, who erroneously concluded that the Lovely Skin Marks were suggestive.  As a result, Ishtar suffered the expense of hiring a rebuttal survey expert.  While Lovely Skin's litigation strategy in this regard was also unsuccessful (*see* Memorandum Opinion, at 20-21, 27-28), the Court finds that Lovely Skin's motive was not to "oppress" Ishtar.  Rather, the Court finds that Lovely Skin genuinely thought that Mr. Berger's opinion would be helpful.  (*See* Lovely Skin's brief in support of the admissibility of the report and testimony of plaintiff's expert James T. Berger, Filing No. 114).

Second, Ishtar states that Lovely Skin's purpose in bringing the suit was to hinder competition, rather than to protect the Lovely Skin Marks.  For example, the evidence at trial showed that Lovely Skin delayed making any demand upon Ishtar until a few years after Lovely Skin learned of Ishtar's

alleged infringement.  Lovely Skin explains the time lag by claiming both that it had difficulty locating Ms. Vardeh and that it chose to bring suit after it experienced what it purports to have been actual instances of confusion.

Ishtar also claims that during the interim before filing suit, Lovely Skin tried to interrupt distribution from vendors to Ishtar "in an attempt to disrupt Ishtar's supply" (Filing No. 183, at 5).  While it is true that Dr. Schlessinger indicated in some of his emails to distributors that he was unhappy with Ishtar as a competitor, the Court believes that this is not an unusual occurrence in the world of commerce.  On the other hand, Lovely Skin makes its own allegations of inappropriate conduct by Ms. Vardeh's husband and Ishtar's major supplier, Dr. Alan Darush, including the fact that just a few weeks after the judgment in this case was entered, Dr. Darush filed suit against Lovely Skin in the State of California (Ex. 2, Filing No. 204, at 11).  The Court finds that both parties have introduced issues that are far afield from the one before the Court.  Such allegations are not relevant to the case at hand, and the Court declines to enter the fray.

In addition, Ishtar renews some arguments having to do with Lovely Skin's choices of Google adwords; Ishtar made the same arguments in support of its affirmative defense of unclean hands.  The Court did not specifically make any conclusions of

law as to this issue in its Memorandum Opinion, since the Court decided for Ishtar on the issue of infringement.  The Court declines to do so now.

Finally, Ishtar alleges that there are a great many similarities between this case and one out of the Southern District of Florida, *Vital Pharmaceuticals, Inc. v. American Body Building Products, LLC*, 510 F. Supp. 2d 1043 (S.D. Fla. 2007). There, the court awarded attorney fees to a defendant in a trade dress infringement case where the plaintiff had not conducted a secondary meaning survey, had introduced evidence of advertising using an interested witness, and had not tied its advertising expenses to any evidence of the effect the advertising had on consumers.  The Court agrees with Ishtar that these elements are also features of the case at hand.

The Court notes, however, that there were other elements in *Vital Pharmaceuticals* that are not present here.  For example, in that case, which involved the trade dress of a bottle, the plaintiff "attempt[ed] to prove that it designed a new and unique bottle for [one of its products], when all evidence revealed the opposite to be true," and the court found this to be "evidence of bad faith." *Vital Pharmaceuticals*, 510 F. Supp. 2d at 1050.  No such allegations are made here.  Also, in that case, the court found a "starkly different appearance" between the products of the plaintiff and the defendant that

should have "given the Plaintiff pause in thinking it could prove a likelihood of confusion." *Id.* at 1051. In this case, while likelihood of confusion was not found, an indisputable similarity exists between the parties' marks.[2] Finally, the *Vital Pharmaceuticals* court found that the plaintiff's motive was "to stifle legitimate competition, rather than to protect a valid trade dress," as "evidenced" by plaintiff's "evolving definition of its trade dress throughout the case." *Id.* In summary, this Court observes that the plaintiff in *Vital Pharmaceuticals* "brought an action that was groundless, unreasonable, [and] vexatious" to a degree not evident in this case. *Hartman*, 833 F.2d at 123.

       Lovely Skin states that it "spent millions of dollars advertising and promoting the LovelySkin and LovelySkin.com marks" (Filing No. 204, at 1). "This expenditure was made in good faith based on Lovely Skin's perception that the federal trademark registrations issued by the U.S. Patent and Trademark Office provided it with the exclusive right to use those marks in connection with skincare products" (*Id.*). The Court has no reason to doubt Lovely Skin's good faith in that conduct. Lovely Skin also avers, "The fact that this Court was not persuaded by

---

[2] "Where there is some evidence in the record to support the claims of the non-prevailing party, the case is not exceptional." *Lewis & Clark,* 2009 WL 3617584, at *2 (citing *Scott Fetzer Co.,* 101 F.3d at 555).

the argument and evidence presented at trial does not warrant a conclusion that Lovely Skin acted unreasonably or vexatiously in trying to protect its mark and its business" (*Id.* at 2). Again, the Court agrees.

The fact that Lovely Skin's presentation of evidence at trial did not prevail does not necessarily constitute evidence of bad intent. "Despite ruling against [counterclaimant], the Court is satisfied that [counterclaimant's] purpose prior to and throughout litigation was to vindicate what [counterclaimant] believed were its legal rights." *Mid-State Aftermarket Body Parts, Inc. v. MQVP, Inc.*, 373 F. Supp. 2d 945, 946 (E.D. Ark. 2005) (finding the case unexceptional). The Court's impression at trial was that Lovely Skin genuinely believed that its pursuit of litigation was a reasonable business decision to protect what it assumed were validly registered marks. In short, the Court finds that Lovely Skin's actions in bringing this suit were not "beyond the pale of acceptable conduct." *Aromatique*, 28 F.3d at 877. A separate order will be entered in accordance with this memorandum opinion.

DATED this 21st day of December, 2012.

BY THE COURT:

/s/ Lyle E. Strom
_____
LYLE E. STROM, Senior Judge
United States District Court